UPDIKE v. MACE et al.

(District Court, S. D. New York. March 6, 1912.)

1. WITNESSES (§ 149*)—COMPETENCY—TRANSACTION WITH PERSON SINCE DECEASED.

In a suit to impose a trust on a part of the residue of an estate, willed by testator to his widow, subject to the alleged trust, against the executor of the widow, evidence of complainant, the alleged beneficiary, with reference to statements and conversations had between her and the widow, were incompetent under Rev. St. § 858 (U. S. Comp. St. 1901. p. 659), prohibiting testimony by any party in any suit against an executor concerning any transaction with or statement by the testator: but evidence of declarations of testator are admissible, his executor not being a party to the suit.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 651, 652; Dec. Dig. § 149.*]

2. EVIDENCE (§ 317*)—HEARSAY—DECLARATIONS OF DECEDENT.

Declarations of a testator as to his intentions with respect to the making of his will are inadmissible to establish an intent on his part to create a trust in favor of complainant; such declarations being hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

3. WILLS (§ 487*)—EVIDENCE—DECLARATIONS OF TESTATOR.

Declarations of a testator as to his intentions with respect to the making of his will are inadmissible to show his intention to create a trust

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in favor of complainant, as such declarations would be in effect the establishment of a testamentary disposition by parol.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

4. TRUSTS (§ 25*)—EXPRESS TRUST.—ACT CONSTITUTING.

Testator at the deathbed of his son agreed to carry out the dying request of the son that the share of the father's estate that would have gone to the son if he had survived the father should go to the son's surviving wife. Testator, having failed to mention the son's wife in his will, stated that, though she was not remembered in the will, he had made arrangements with his wife to make the trust which he had promised in favor of the son's wife, and that she should have the full share of what the son would have received if he had lived. Held, that testator's statements were insufficient to establish the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 34–37; Dec. Dig. § 25.*]

5. TRUSTS (§ 44*)—PAROL TRUST—PROOF.

Evidence held insufficient to show the creation of a trust by which testator and his widow were to give a part of testator's residuary estate devised to the widow to complainant or to show the specific amount of the residuary estate to be charged.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

6. LIMITATION OF ACTIONS (§ 83*)—DEATH AND APPOINTMENT OF EXECUTOR.

Where complainant claimed that testator created a trust of a portion of his residuary estate, bequeathed to his widow, for complainant's benefit, which residue consisted of both real and personal property, complainant's right to sue to enforce the trust did not accrue until one year after the appointment of testator's executors, and was therefore not barred until the expiration of ten years thereafter.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 426, 431–438; Dec. Dig. § 83.*]

7. EQUITY (§ 87*)—STALE DEMANDS.

The defense that an equitable claim is stale is now generally governed by the question whether the statute of limitations applies.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244, 395; Dec. Dig. § 87.*]

In Equity. Suit by Sarah E. Updike against Arthur J. Mace, individually, and against Arthur J. Mace and James Edward Rice, as executors of the will of Malinda G. Mace, deceased. Decree for defendants.

Franklin Bien, for complainant.

Ralph Hickox (J. Parker Kirlin, of counsel), for defendants.

HOLT, District Judge. This is a suit in equity brought by the complainant, a citizen of New Jersey, against the defendants, citizens of New York, to establish an oral trust, in favor of the complainant, on the residuary estate of Levi H. Mace, which was devised and bequeathed to his wife, Malinda G. Mace.

Levi H. Mace, a resident of Williamsbridge, N. Y., died October 20, 1896, in the seventy-second year of his age. He left surviving his wife, Malinda G. Mace, and three sons: Edward, Henry, and Arthur. They had another son, Elwood H. Mace, to whom the complainant, whose maiden name was Sarah Robinson, was married

on May 28, 1878. He died intestate about three years after the marriage, on May 5, 1881. He was at the time of the marriage 19, and she 20, years of age. No children were born of this marriage. The complainant made her home at the Mace homestead during her marriage to Elwood H. Mace, and for about five years after his death. In February, 1886, she remarried. Her second husband was Alfred Dillon. Upon her marriage to Dillon, she left the home of Levi H. Mace, and never lived there again. Alfred Dillon died in August, 1887. In 1889, the complainant married George E. Updike, who is still living.

Levi H. Mace left a will, dated October 10, 1896, which was duly admitted to probate November 7, 1896. By it he devised and bequeathed to his wife the real estate in New York occupied by his firm; to his son Arthur, $50,000 previously advanced to him; to the wife and children of his son Arthur, $75,000; to each of his sons Edward and Henry, $100,000 in trust; to Josephine Norris, who had formerly resided in his family, $1,000; and to his wife, the residue of his estate, by the following clause in his will:

"Tenth. I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, and wheresoever situate to my wife, Malinda G. Mace. Such devise and bequest to be in lieu of and in full compensation for all dower, dower rights and thirds that she may have in any and all of my estate."

The complainant was not referred to in any part of the will.

Malinda G. Mace died November 17, 1906, at the age of 78, having survived her husband about 10 years. She made two wills during her widowhood, one in March, 1897, about five months after her husband's death, and one April 28, 1903, which last will was duly admitted to probate December 2, 1906. By this will Mrs. Mace, after giving certain small legacies and annuities to her three sisters, gave $50,000 to each of her sons Edward and Henry, in trust; $25,000 to the wife and $50,000 to the two daughters of her son Arthur; and the residue of her property to her son Arthur. The complainant was not referred to in either of the wills of Mrs. Mace.

Levi H. Mace left an estate of the value of about $345,000. The value of the residuary estate devised and bequeathed to his wife was about $129,000. The share of the estate which Elwood H. Mace would have received if he had survived his father, and his father had died intestate, would have been about $63,000. The complainant alleges in the bill that the residuary estate devised and bequeathed by Levi H. Mace to his wife was "charged with a trust to transfer and pay over to the complainant so much thereof as would equal in value the amount or share of the estate of Levi H. Mace which would have passed to and become the property of Elwood H. Mace had he survived Levi H. Mace and Levi H. Mace had died intestate.

[1] The evidence in this case was taken out of court in accordance with the usual equity practice. The testimony of Mrs. Updike contains many statements of conversations between her and Levi H. Mace and between her and Malinda G. Mace. All this evidence is objected to as being inadmissible by section 858 of the U. S. Re-

vised Statutes (U. S. Comp. St. 1901, p. 659), prohibiting testimony, by any party, in any suit against an executor, of any transaction with or statement by the testator. In my opinion, any testimony by Mrs. Updike as to transactions with or statements of Malinda G. Mace is inadmissible in this suit, because prohibited by such statute, and I shall disregard it. Her testimony as to transactions with or statements of Levi H. Mace, I think, with some hesitation, is not inadmissible because prohibited by said statute, although, of course, it may be inadmissible on other grounds.

About an hour before Elwood H. Mace's death, there were present, at his bedside, his wife, his father and mother, his two brothers Edward and Henry, and Mrs. Healey, a friend of the family. A conversation took place at that time between Elwood H. Mace and his father. Mrs. Updike testifies that Elwood said to his father:

"I have only one request to make, that you will give to Sarah what would be mine if I were spared to live."

And that his father replied:

"Yes, Elwood, she shall have what would have been yours, if God had spared you; she has been a noble wife to you and a daughter to us."

Edward Mace testifies:

"Elwood Mace said, 'What will become of Sarah?' Father said: 'Don't worry about that, Elwood; she will be provided for.'"

Henry Mace testifies:

"He says to my father, 'Look out for Sarah.' My father * * * said: 'Elwood, don't worry about that; she will be looked after.'"

Mrs. Healey testifies:

"He (Elwood) says, 'Will you look after Sarah, or attend to Sarah?' * * * He (Levi H. Mace) said: 'Don't worry about that; that will be attended to.'"

[2-4] Mrs. Updike testified that Levi H. Mace told her, shortly after his will was executed, that she "was not remembered in the will, but he had made arrangements" with his wife "making the trust which he had promised to give Elwood's share to" the complainant. This evidence was duly objected to, and in my opinion was inadmissible as hearsay, if not on other grounds, and I disregard it. Mrs. Updike's brother, John M. Robinson, testified that he had various conversations with Levi H. Mace in which he said that it was his intention to divide all his property, and that "Sarah should have the full share of what Elwood would have received if he had lived." This testimony was objected to and was in my opinion inadmissible, both as hearsay and as attemptng to establish a testamentary disposition of property by parol. In any event, it did not purport to establish any trust.

[5] The other testimony relied on by the complainant consists of letters written by Malinda G. Mace and the evidence of witnesses to conversations with Malinda G. Mace. About 60 letters by Malinda G. Mace are in evidence, most of which were written to Mrs. Updike. They usually treat of affairs of the family, of friends

and relatives, and of the church to which she belonged. They show feelings of affection on her part towards Mrs. Updike, and that her son Arthur was not friendly to Mrs. Updike. Most of these letters contain nothing pertinent to this case, but a few contain statements much relied on by the complainant. These letters are as follows:

"Wmbridg Oct. 27 (1896)

"Dear Sarah  After I got hom I thought perhaps you might tell Lelia what I told you yesterday  she would tell Arthur sure  dont breath to a soul  I will see that you get it as soon as things gets settled  and i know how to arrange it—I will be up to get my waist fitted soon your ever loving mother
"M G Mace

"I send by Johson in haste."

"Wimbridg Nov 7 (1896)

"Dear Sarah  Your note received.  I know you feel bad that I am unable to visit you but Arthur threatens me all the time what he will do so for peace I think best it will all come out right  I know it will be hard for you and me to be separated so many years together and my love the same as the rest that mighty dollar for fear you would get your share.  I think Arthur feels that your Father had made some request to me and that is why they watch so  even the servants is asked whom comes and where I go.  Arthur seems to arrange always for some one to go with me  but I will give him a trial and see what he  will do about giving up drink.  After the Holidays I will meet you at Mrs. St. jons and then I will talk  better just keep all to yourself
"From your ever loving mother                    M G Mace."

"Williamsbridg March 18 (1901)

"Dear Sarah I will meet you at the church at Mrs. Haltets funeral to-morrow afternoon  i want to see you particular  I think i can soon arrange to give you some Mortgages but the trouble is that the lawyer might tell Arthur as they are together so much—I wish you had your share  my worry would be at rest—
Yours in haste with love mother                    M G Mace."

"Wmsbridg Aug. 10th (1903)

"Dear Sarah  Your note at hand  I am glad Johny did not attempt any law as it would kill me  I hope to see some way out soon  but Arthur takes all the business out of my hands so I feel some day I will have to tell him—for it only right you have your share you Father to you through me—thank Johny for me and tell him I will to give your share soon—if I could manage better—The folks all out and Arthur has been away several days  God knows where—I heard he is at City Island drinking—so if he don't tonight I will go look for him as the children are away in the mountains  *  *  * Sarah just bear with me a little longer and I will try to manage all for you  my pen is so poor cant write—I will be up soon and take lunch with you
"from your ever loving mother                    M G Mace."

"Wmsbridg Aug 10th 1903

"Dear Sarah  Your received  I am glad Johny considers me so much in this case  you ought to have have your share long ago but i dont see how i can get it for you without Arthur finding out  Your Father left that request in secret with  knowing how much i love you he was sure of me doing it but he did not stop to think that i could not manage any business i thought to have Mr. Guyer help me arrange it for you as he also know about how your Father loved you but his death was so soon  after he left me to think for myself every way  i plan i could not do it without Arthur know it and i could not stand the trouble he would make. i do everything to please him for the hope he will give up drink and the fast life  Oh

Sarah how this breaks my heart but it seems hopeless as he goes away and stay days and we dont know where he is God help me to do what is right for all.

"Your ever loving Mother          M. G. Mace."

"In care of Mrs. Hallett."

Various witnesses testify to conversations with Malinda G. Mace substantially as follows:

Mrs. St. John, the wife of the pastor of the church at Williamsbridge of which Mrs. Mace was a member, testified, in substance, that Mrs. Mace and Mrs. Updike used to meet at the parsonage between the date of Mr. Mace's death and July, 1907, and in conversations there Mrs. Mace said that Mrs. Updike was to receive Elwood's share, which would be one-quarter.

Mrs. Westervelt, a friend of Mrs. Mace, testified that she had a conversation with Mrs. Mace and Mrs. Updike in 1903, in which Mrs. Mace said to Mrs. Westervelt that there was nothing said about Mrs. Updike in the will, "but Mr. Mace left that to me to give her her share."

Mrs. Palmer, a member of the same church as Mrs. Mace, testified that in May, 1897, Mrs. Mace told her that "Mr. Mace did remember Sarah, but had left it in trust for me to pay to her Alley's share," and that later, in Mrs. Updike's presence, Mrs. Mace made substantially the same statement.

Mrs. Martin, who was housekeeper for Mrs. Mace from June, 1895, to 1897, testified that Mrs. Mace once told her:

" 'I am afraid, the way Arthur is going on, that I shall not be able to give Sarah what it due her, because,' she says, 'it is not easy to get such an amount of money together, about,' she says, as near as I can remember. '$250,000, which is Sarah's share."

Mrs. Poland, a sister of Mrs. Mace, testified that after Mr. Mace's death she had a conversation with Mrs. Mace. When asked to state the conversation, she replied:

"She made this secret trust."

When asked for whom, she replied:

"Mrs. Sarah Updike. She could not pay it out. She could not have the money because Mr. Arthur took care of all the property. It seemed to worry her."

Mr. Rauschaupt, a photographer at Mt. Vernon, testifies that he once called on Mrs. Mace to deliver a package from Mrs. Updike. He never saw Mrs. Mace at any other time. He said that "she started with a story to the effect that she was sorry she could not give Mrs. Updike what she was entitled to, but no doubt she would get something, as there was something held in trust for her by her."

Edward H. Mace, one of the sons, testified that he had a conversation with his mother about three months before she died in which she said:

" 'It is nothing but money all the time. I have to pay Sarah's money too.' Says I, 'why don't you pay her then?' * * * I made the remark that she had money in the East River Savings Bank and some certificates. * * * She says, 'That is not enough.' "

Mrs. Weaver, a friend of Mrs. Mace, testified that some time after the death of Mr. Mace she and Mrs. Mace would visit Mrs. Updike, and every time Mrs. Mace would say:

"I am very sorry I cannot give her Alley's share he (Mr. Mace) gave me to give her."

This is substantially the evidence upon which the complainant relies in this case. In estimating the weight to be given to the evidence, I may say, in respect to the promise made by Levi H. Mace to his son Elwood, upon his deathbed, that I accept the version as given by Edward and Henry Mace and Mrs. Healey rather than the version given by Mrs. Updike. It seems to me more probable that Elwood H. Mace, at such a time, should have simply asked his father to take care of his wife, and that his father should have replied that she would be provided for, than it was for him to have asked his father to give to his wife what would be his if he were spared to live, and that his father should have replied, "She shall have what would have been yours if God had spared you." In any case, if Mrs. Updike's version of the promise were accepted, it would have no legal validity. Levi H. Mace, even if such a promise had been given, would have been legally free to dispose of his property by will, or in any other manner, without giving any share of it to the complainant, and the only real relevancy of all the evidence in respect to the deathbed promise to Elwood is to show the affectionate and tender nature of the relations between Mr. and Mrs. Mace and the complainant at that time. In respect to the evidence contained in the letters written by Mrs. Mace, it is to be observed generally that there are but few among the many letters written which contain any reference to any matters involved in this suit; that those which do contain such references are somewhat obscure; and that, while Mrs. Mace appears in them, and by all the testimony, to have been a good, kind, and religious woman, she also appears, by all her letters, to have been a woman without much capacity for clear and accurate statement.

Most of the witnesses as to statements made by Mrs. Mace in conversation are very old ladies, friends or contemporaries of Mrs. Mace. They were testifying to conversations, many of which had taken place some years before they gave their evidence. Most of them, although undoubtedly women who were conscientious and who intended to be truthful, appear by their evidence to have been more or less rambling and diffuse, and lacking in clearness and precision in their statements. I distrust the accuracy of some of the witnesses. Almost all of them, before testifying, had been visited by Mrs. Updike, and had talked over with her the events as to which they testified. I am, however, convinced, notwithstanding the generally unsatisfactory nature of this evidence, that Mrs. Mace, at times during her widowhood, felt that there was an obligation upon her to transfer some money or property to the complainant, and that that obligation was connected in her mind with something which her husband had said to her; but there is, in my opinion, no evidence, sufficient to support a finding in this case, that Levi H. Mace ever told his wife that his residuary estate given to her was to be charged with a trust in favor of Mrs. Updike,

or that Mrs. Mace ever agreed with her husband that she would accept the residuary estate charged with such trust. Nor, if such a conclusion could be reached, is there sufficient evidence in this case to enable a conclusion to be reached as to how much of the residuary estate was intended to be paid to Mrs. Updike. The complaint charges that amount to be what would have been the share which would have passed to Elwood H. Mace, had he survived Levi H. Mace and Levi H. Mace had died intestate; but whether it was that share, which would have amounted to about $63,000, or whether it was $250,000, which Mrs. Martin testified that Mrs. Mace said was the value of the share, or whether it was one-quarter of the residuary estate given to Mrs. Mace, or what the amount was, is left entirely vague by the evidence in the case.

On the other hand, in considering the evidence in this case in opposition to the complainant's claim, there are, at the outset, the weighty facts that the wills of Levi H. Mace and of Malinda G. Mace make no provision whatever for the complainant. A will has always been recognized in the law as one of the most seriously considered and solemn legal instruments to which the greatest weight should be given. Levi H. Mace was a man of strong will, and of large business experience and capacity. There was no reason, if he wished to make any provision for the complainant, either in the way of a trust or otherwise, why he should not have inserted it in his will. If he wished to give his residuary estate to his wife for her life, and to charge it with a trust for the benefit of the complainant after his wife's death, the natural and appropriate method of doing so would have been to insert a provision to that effect in his will. He provided in his will for all his children and the wife and daughter of his son Arthur. He gave a legacy of $1,000 to Josephine Norris, who had been brought up in his family on substantially the footing of a daughter, although never legally adopted, but who, when Mr. Mace made his will, had left his family. But he left no such legacy to the complainant. The complainant had lived in his house during the three years of her marriage to Elwood H. Mace, and during the five years of her subsequent widowhood. She appears to have been given a home there without charge. She received gifts of money, and of other things, from Mr. and Mrs. Mace, and she stood all the time, until her second marriage, upon the footing of a daughter-in-law to Mr. and Mrs. Mace, for whom they had feelings of affection. When she married Mr. Dillon, she left the Mace homestead, and never lived there again. The presumption is that her second husband supported her. When he died, and she married a third time, the presumption is that Mr. Updike, her last husband, supported her.

If Mr. Mace had given her in his will a legacy, such as he gave Josephine Norris, or even if he had made such a provision for her in his will as she claims he directed should be made by his wife, undoubtedly the past relations between them would have explained such testamentary disposition in her behalf; but on the other hand there was nothing unusual or strange in the fact that Levi H. Mace did not consider, after the complainant had married Mr. Dillon, and subse-

quently had married Mr. Updike, that he was under any obligation to bequeath any portion of his property to a daughter-in-law who had married again, to the exclusion of his own wife and children. Moreover, if for any reason a man of Mr. Mace's strong will and business sagacity had preferred, instead of making a direct provision for the complainant in his own will, to create an oral trust with his wife, by which his wife's residuary estate was to be charged with a sum which would be equivalent to his son Elwood's share if he died intestate, he must have seen that the widow probably would not accept the residuary estate charged with the proposed trust. The tenth paragraph of his will, which gave her the residuary estate, provided that the devise and bequest should be "in lieu of and in full compensation for all dower, dower rights and thirds that she may have in any or all of my estate." The value of Mr. Mace's residuary estate was about $129,000. The value of Elwood's estimated share was about $63,000. If Mrs. Mace had accepted the residuary estate, and out of it paid to the complainant the estimated value of Elwood's share, Mrs. Mace would have had left about $66,000. But the value of her thirds and dower in the estate, if she had claimed them, would have been about $90,000, and the probability is that, if the gift of the residuary estate to Mrs. Mace had been charged with a trust, in the will of Mr. Mace, such as it is claimed it was charged with, Mrs. Mace would have refused to accept the provisions of the will, and would have demanded her dower and thirds; that, at least, she might do so her husband as a practical business man probably knew.

Moreover, the fact that Mrs. Malinda Mace made two wills, one about five months after her husband's death, and one about three years before her own death, neither of which made any provision for Mrs. Updike, is of the greatest importance. Some of her letters, and some of the witnesses who have testified to conversations with her, assert, in substance, that her son Arthur controlled the business, and was hostile to Mrs. Updike, and that Mrs. Mace was unable to do anything for Mrs. Updike for that reason; but there is nothing to indicate that her son Arthur or anybody else controlled her or influenced her in the making of these two wills. The second will mainly differs from the first in the fact that she increased her legacies to her sons Edward and Henry to the extent of $100,000, which her son Arthur, who was her residuary legatee, would not have been likely to permit her to do if she was under his influence or control. The lawyer who drafted her second will testified that, in the preliminary consultations in respect to it, Mrs. Updike was mentioned. He objected to stating what was said about her on the ground that it was a confidential statement to Mrs. Mace's legal adviser, and what Mrs. Mace said was not stated; but it does appear that at the time she was making her last will Mrs. Updike was in her thoughts, and yet no provision is made in the will in her behalf. Mrs. Mace appears to have been a good, just, and conscientious woman. Whatever feeling she had, at various times during her widowhood, of her obligation to do something for Mrs. Updike, her deliberate conclusion was, when she made her wills, to make no provision for her, and

nothing but the clearest and strongest proof of the establishment of such an oral trust as is alleged in this case should be permitted to outweigh the fact that neither in the will of Levi H. Mace, or of Malinda G. Mace, was any provision made for the complainant.

This suit is evidently based on the rule established by a line of cases of which O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53, and Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305, are perhaps the leading authorities, establishing that when a testator bequeaths property outright in a will, apparently in absolute ownership, but it is proved that the devisee or legatee has agreed that, in consideration of the transfer of the property to him in absolute ownership he will accept it charged with a trust, such legatee, if he refuses to carry out the trust, may be obliged to do so, under the theory that, upon a refusal to do so, he holds the property as a trustee ex maleficio. This legal theory is easily capable of abuse. It is an exception to the general principle that all trusts affecting real estate must be evidenced by writing, and in its practical application it generally amounts to an effort to vary the provisions of a written will, executed with all the formalities required by law, as a result of oral testimony. In order to establish such a trust, there must be clear and convincing proof that there was a specific agreement between the testator and the legatee that such a trust should exist. The evidence must go further than to show that the testator requested the legatee to execute such a, trust. It must appear, not only that the testator requested the legatee to carry out such a trust, but that the legatee agreed with the testator during his lifetime that he would carry out such a trust, and that the legacy was given and accepted in reliance upon such an agreement. Moreover, the subject-matter of the trust must be clearly proved. If, in the case at bar, a trust had been satisfactorily proved, there would still remain the fact that there is no satisfactory evidence upon which a court could determine how much of the residuary estate bequeathed by Levi H. Mace to his wife it was the duty of the wife to pay over to Mrs. Updike. The evidence in the case is, in my opinion, too vague and inconclusive to establish either that there was any trust created by an agreement between Levi H. Mace and his wife, or what was the specific amount with which the residuary estate was charged.

[6] The defendants have pleaded the statute of limitations and the staleness of the claim as a defense. In view of the conclusion to which I have arrived on the merits, it is perhaps unnecessary to pass upon this defense; but I will briefly give my conclusions upon it. In the first place, as the cause of action alleged is a continuing trust, it is perhaps questionable whether the statute of limitations began to run until Mrs. Mace's death, or at least until a demand was made on her to execute the trust. But I think, on the whole, that the ten-year statute applies, and that the statute began to run as soon as a suit could be brought. Levi H. Mace died October 20, 1896. This suit was brought June 4, 1907. If the complainant's cause of action accrued instantly on Levi H. Mace's death, the action was barred. But I do not see how the suit could have been brought

until Mrs. Mace received the residuary estate. The executors were not obliged to transfer the personal estate for a year after their appointment. The residuary estate given to Mrs. Mace consisted of both realty and personalty, and the alleged trust would have been a charge on both as an entirety. Upon the whole, I do not think this suit could have been brought against Mrs. Mace until at least a year after her husband's death. If that is so, this suit was begun in time.

[7] The defense that the claim is stale is now generally governed by the question whether the statute of limitations applies. But it is still true that equity does not favor stale claims. Mrs. Updike might have sued on this claim many years before Mrs. Mace died. If she had done so, Mrs. Mace could have been heard in explanation of her letters and statements and of her action generally.

My conclusion is that the bill should be dismissed on the merits, with costs.