## MAYFIELD v. KANSAS CITY LIFE INS. CO.
### No. 9104.

Circuit Court of Appeals, Seventh Circuit.
Dec. 4, 1946.

Rehearing Denied Jan. 18, 1947.

Jay E. Darlington, of Hammond, Ind., and George Cohan, of Gary, Ind., for appellant.

Tom Leeming and Richard V. Henry, Jr., both of Chicago, Ill., L. L. Bomberger, of Hammond, Ind., and Lewis E. Bulkeley, Jr., of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and HOLLY, District Judge.

HOLLY, District Judge.

The complaint in this case consisted of ten paragraphs but prior to the trial plaintiff dismissed as to nine of the paragraphs and went to trial on the tenth.

Ruby Mayfield, administratrix of the estate of Reuben Thomas, is the niece and only heir at law of said Reuben Thomas who resided near Bunceton, Missouri, and died there on October 11, 1940. Prior to his death he had taken out five annuity contracts with defendant each of which provided for an annuity to Reuben Thomas and the payment of the principal sum of the contract to designated beneficiaries after his death.

The first of these contracts dated April 15, 1935, in the principal sum of $4,000, the second dated April 15, 1935, in the principal sum of $12,000 and the third dated October 15, 1935, for $17,000 were made payable after the death of Reuben Thomas, to Charles L. Thomas, a second cousin, and Charles M Sheppard, a business associate. Later the beneficiary in

these contracts was changed and they were made payable to Charles L. Thomas who was also the beneficiary in the other two contracts, one dated November 20, 1935, for $7,000 and the other dated April 15, 1937, for $5,000.

On April 16, 1940, Reuben Thomas withdrew $4,000 of the $12,000 invested in the contract of April 15, 1935, reducing the principal amount to $8,000.

After his death three riders were found with this contract. The first dated November 20, 1936, changed the beneficiary from Charles L. Thomas and Charles M. Sheppard to Charles L. Thomas. Another, dated April 15, 1940, changed the beneficiary from Charles L. Thomas to Ruby Mayfield, niece, and the third dated September 21, 1940, changed the beneficiary from Ruby Mayfield, niece, to the trustees of the New Lebanon Cemetery Association of Bunceton, Missouri, and Ruby Mayfield, $500 to be paid to the trustees of the New Lebanon Cemetery Association and the balance to Ruby Mayfield.

Defendant paid the principal sums of the contracts to the beneficiaries designated.

Plaintiff complains that the payment was wrongful and that she is entitled to recover from defendants the full amount of the principal sums of all of the contracts except the $500 assigned to the Lebanon Cemetery Association and certain sums withdrawn by Reuben Thomas in his lifetime.

She alleges as the basis for her claim that on or about April 15, 1940, decedent was at the home office of the defendant and that in the offices of certain of its executive officers and in the presence of Earl Holliday, its agent, and of said officers who are unknown to her Reuben Thomas executed a certain paper in the nature of a will, the terms of which directed the payment of the proceeds of said contracts to his estate, stating that they were assets of his estate for the benefit of Ruby Mayfield, his only heir; that he then and there with the knowledge of defendant gave said instrument to said Earl Holliday and stated it was to serve as a memorandum directing the disposal of proceeds of said contracts by defendant. The

contents of the instrument, she avers, are unknown to her but she has good reason to believe and states the fact to be that the said Earl Holliday, desiring to divert said contract proceeds from said estate to his friend and confederate Charles L. Thomas, concealed and destroyed said instrument about the time of decedent's death and forged a substitute either by forging decedent's name on the substitute or by writing in the terms thereof over some actual signature of the decedent which he had previously obtained on the paper.

Plaintiff further alleges defendant either knew of the execution of said instrument at its home office or was chargeable with such knowledge, and defendant's course of dealing with decedent relative to said contracts was such that Holliday held said instrument as defendant's agent; that the foregoing acts and facts constituted a change of beneficiary from Charles L. Thomas to decedent's estate and that defendant thereby became obligated to pay to the estate instead of to Charles L. Thomas.

Plaintiff further charges in her complaint that Charles L. Thomas as between himself and the decedent was a mere trustee of the proceeds of said contracts, charged with the duty of receiving and holding the proceeds thereof for the benefit of the estate of the decedent and that defendant knew or was chargeable with knowledge of such trusteeship by reason of the facts heretofore set out; that it was notified of the fact that said Charles L. Thomas was entitled to said money only as a trustee and not otherwise, but notwithstanding such notification it paid said monies to said Charles L. Thomas.

There is a further charge in the complaint that Holliday conspired with Charles L. Thomas to divert the proceeds of said contracts from the estate of the decedent to said Charles L. Thomas personally, that defendant is chargeable with knowledge of the conspiracy and through its payments of the proceeds of said contracts to Charles L. Thomas after the notice above mentioned it enabled the conspirators to defraud the estate.

Defendant entered a general denial of the charge of wrong doing on its part and

lack of knowledge of the act of Holliday and Charles L. Thomas.

To sustain her case plaintiff, a resident of Indiana for sixteen years prior to the death of Reuben Thomas, testified that she and decedent corresponded by letter frequently until two years before his death when his hand writing became "wobbly." Charles L. Thomas moved in with decedent about 1933 or 1934. Decedent told Mrs. Mayfield in 1937 that Charles L. Thomas came to his house in a drizzling rain, said he could not live with his wife any longer and asked if he might come and live there. Decedent replied that he could but it was not because he was Lester Thomas but that the decedent would do it for a dog. Charles L. Thomas, generally spoken of as Lester Thomas, worked on the farm, but very little.

Decedent went to Indiana to visit plaintiff in 1939. On that visit he had a conversation with plaintiff in which he spoke of the banks all closing and said he had loaned some money to the Kansas City Life Insurance Company and taken out some contracts as they would bring in more interest; that he had put two men on these contracts as he wanted one to watch the other; that when he was done with it these two men would know what he wanted done with his estate, they would know how he wanted it handled. She spoke of having only a small place, five acres, and he told her to forget it, some day she would have plenty of land.

In August 1940, plaintiff and her husband visited decedent at his home. As they were leaving he said to her that he had fixed the $8,000 he had loaned to the Kansas City Life Insurance Company so she would get it as soon as he died; that she knew she couldn't be administratrix of the estate, and the balance would have to go through administration; that he had made several gifts to some of the poorer relatives and he wanted the New Lebanon Cemetery Association to get $500 and plaintiff would get the rest, but it would have to go through the estate and it would be a year before she would get it; that he wanted the old homestead to go down in the Thomas name and he was going to give Lester $4,000 or $5,000 to buy the Thomas homestead back and he wanted it deeded so it would go down to his boys. He further said he was not going to make a will, but that he had made a memorandum and left it with the Kansas City Life Insurance Company, and in that memorandum it would tell just what he wanted done; that when the time came Charlie Sheppard would know what he wanted done, he would tell her what to do.

Plaintiff went to see decedent in his last illness. A few days before he died Lester walked through the room. Decedent told Lester to get Sheppard, that he hadn't finished his business yet, and if he didn't get Sheppard he, Lester, would be clear out.

On the question of the alleged fraud and conspiracy plaintiff testified that a few days before decedent's death Holliday drove to the Thomas home. Plaintiff was sitting on the porch with her husband and the doctor who was attending decedent. He, Holliday, spoke to all of them and said he had brought along a memorandum Reuben had left and wanted all of them to look over it and see if it was all right. It was a yellow sheet of paper. Her testimony as to its contents was excluded. The doctor looked it over and said it was not worth the paper it was written on as there were no witnesses.

A few days after the death of Reuben Thomas, plaintiff was in the probate court of the county. Holliday came in, laid down a white paper and told the judge it was the paper Reuben Thomas executed in the office of the Life Insurance Company in Kansas City, and left with him, Holliday, as a memorandum of what decedent wanted done. He thought it was his duty to hand it in as evidence of decedent's wishes. It was signed with ink and was not the yellow paper shown at the house.

Some time afterwards, but before defendant had paid out the money on any of the contracts, plaintiff's attorney told an officer of the defendant the signature of the decedent on the rider which assigned $500 of the $8,000 remaining of the $12,000 contract to the New Lebanon Cemetery Association was not the genuine signature

of Reuben Thomas; that as the signature on this assignment was a forgery he was asking the company to withhold payment on the other contracts until he had time to examine them.

Herbert J. Walter, a handwriting expert, testified that the name Reuben Thomas on the assignment of the $500 to the New Lebanon Cemetery Association and on a receipt to the company for a contract on which the beneficiary was changed from Charles L. Thomas and Charles M. Sheppard to Charles L. Thomas was not written by Reuben Thomas. He further testified that the signature on another receipt to the company for one of the contracts, after a change of beneficiary, was written by Holliday and that the purported signature of Reuben Thomas on a letter to Sheppard asking for delivery to Earl Holliday of the contract of which Ruby Mayfield became beneficiary was written by Holliday. This letter was also signed by C. L. Thomas.

He also testified that the white paper Holliday had delivered to the probate judge had the appearance of being carried around in someone's pocket for a considerable time; the folds in the paper had become pronounced and dirty; the sides of the creases were worn and the paper was cracked, so much so that when held up to the light you could see through it where the two horizontal folds went across the paper, and otherwise the paper showed signs of age. In his opinion three different typewriters had been used in writing the contents of the instrument. The first had been used in writing the formal parts of the purported will, except dates, etc. The second had been used to write the name Reuben Thomas in the body of the will, the names of Holliday as executor and of Charles M. Sheppard as his successor, and dates. The third was used in writing the body of the will except for the name of Reuben Thomas. It was his opinion that the third typewriter had been used after the paper had been carried around and become worn, while it had been signed at the time the formal part was typed, in other words had been signed in blank.

From examination of other work of Holliday he was of the opinion that all three machines were typewriters which Holliday had owned at different times.

For the purpose of showing the relationship between Charles L. Thomas and Reuben Thomas plaintiff put in evidence a claim filed by Charles L. Thomas against Reuben's estate in which he asked pay for care of breeding stock "under contract" at the rate of $1.00 a day and reimbursement for expense incurred at the time of an accident to decedent.

On this evidence the court directed a verdict for defendant. Plaintiff complains that the case should have been submitted to the jury.

The action of the court was correct. The evidence was not sufficient to sustain a verdict for plaintiff on either of the theories advanced by her.

First: As to the contention that Charles L. Thomas is a mere trustee holding the proceeds in trust for the benefit of Ruby Mayfield, personally, or for the benefit of the estate. The only evidence in the record which, by any possibility, could be said to sustain this contention is that of plaintiff in which she told of conversations with Reuben Thomas in which he indicated that he did not care for Charles L. Thomas and gave her to understand that most of his property, after his death, would go to her.

All he said to her was that he had fixed it so she would get $8,000 as soon as he died, that he was giving something to his poorer relatives and she would get the rest of the estate. These contracts were not a part of his estate and there is no word of testimony in the record showing that he intended any disposition of the contracts other than the proceeds should be paid to the designated beneficiaries.

The evidence was wholly insufficient to sustain plaintiff's theory of a trust. In Trubey v. Pease, 240 Ill. 513, 521, 88 N.E. 1005, 1007, 16 Ann.Cas. 370 the court said:

"It is incumbent on the party asserting the trust to prove it by clear and satisfactory evidence. Whether a trust exists

is to be determined from the proof, having in view all the surrounding facts and circumstances and the intention of the parties, and the proof must be clear and explicit. The words or acts relied upon as creating the trust must show clearly and unequivocally the intention of the donor to create a trust." See also Updike v. Mace, D.C., 194 F. 1001.

■ Second: As to the alleged fraud or conspiracy. To establish the allegations of her complaint on this subject plaintiff proved by a handwriting and typewriter expert that the signatures of Reuben Thomas on the application for change of beneficiary which gave $500 to the New Lebanon Cemetery Association and on certain receipts purporting to acknowledge receipt of the contracts after they had been sent in to the company to have the beneficiary changed were not genuine. These alleged forgeries do not show an intent on the part of Charles L. Thomas to defraud plaintiff, nor was she injured in any way by them. That Reuben Thomas intended $500 to go to the New Lebanon Cemetery Association is admitted by plaintiff and she or her counsel said to defendant's officers they were waiving objection as to the disposition of that part of the proceeds of the contract. As to the receipts upon which, it is charged, Reuben Thomas' name was forged, he did receive the contracts from the company and all the contracts but one were in his box when he died and that was produced by the agent of the company.

The testimony of the expert concerning the white paper proves nothing. It was old and, apparently, had been carried around in a pocket for a considerable time, but in whose pocket we do not know. It might as well have been the pocket of Reuben Thomas as any one else. Three different typewriters were used on it, but that signifies nothing. It directs a disposition of the Thomas' property just as plaintiff testified he wanted it to go. Whatever was done about this paper, it evidently was not for the purpose of defrauding plaintiff or the estate.

■ But even if the evidence was sufficient to show the creation of a trust or the conspiracy and fraud charged in the complaint, there is no evidence of knowledge by the defendant. Its agent Holliday may have been engaged in a conspiracy with Charles L. Thomas to defraud Mrs. Mayfield or the estate, but there is no evidence that any officer of the company had knowledge of that. Nor was notice of the trust brought home to the defendant. If a scheme was on foot to deprive plaintiff or the estate of some rights in the annuity contracts defendant's agent Holliday was a participant in the fraudulent scheme and under such circumstances notice to him is not notice to his principal. Fountain & Herrington v. Mutual L. Ins. Co., 4 Cir., 55 F.2d 120, Bacot v. South Carolina L. & T. Co., 132 S.C. 340, 127 S.E. 562.

Counsel for plaintiff requested defendant to hold up payments on these contracts but the only reason given was that the signature of Reuben Thomas on the assignment of $500 to the New Lebanon Cemetery Association of the contract in which plaintiff was the principal beneficiary was not genuine. It is admitted the signature of Reuben Thomas on all of the other contracts is genuine. The defendant properly paid the amounts due on the other contracts to Charles L. Thomas.

The judgment of the District Court must be affirmed.

Affirmed